## Commonwealth v. McPherson

*Joseph J. Hylan,* Assistant District Attorney, for the Commonwealth.

*Linda Backiel, Harry Lore,* for the defendant Katherine Boudin.

BROWN, *J.,* May 3, 1983—On October 20, 1981 an armored car was robbed in Rockland County, New York. Three men were slain during the robbery and the subsequent escape attempt. Katherine Boudin is alleged to have been a participant in that criminal episode and is under indictment in the Supreme Court of Rockland County, charged with Murder, Robbery and related crimes.

On motion of its district attorney, the Supreme Court of that county ordered Katherine Boudin to submit handwriting exemplars for analysis and comparison on July 29, 1982. On July 30, 1982, she refused to comply and continues in her refusal to this day.

Katherine Boudine attended Bryn Mawr College and graduated in June, 1965. Bryn Mawr College is located in this county, so the District Attorney, in cooperation with the Rockland County authorities

executed a search warrant on August 12, 1982, and seized the Bryn Mawr College file of Katherine Boudin.

This action prompted Katherine Boudin to bring an action that same day in the U.S. District Court for the Eastern District of Pennsylvania seeking to compel the return of the file to Bryn Mawr College. After an extended argument on August 13, 1982, District Judge James T. Giles denied the injunction.

Nevertheless, the Supreme Court of Rockland County, on motion of Boudin, found the procedure defective and ordered the file sealed and returned to Bryn Mawr College with the suggestion that the records could only be obtained through the Uniform Act to Secure Attendance of Witnesses from Within or Without a State in Criminal Proceedings, (CPL §640.10 in New York, and 42 Pa.C.S.A. §5961 et seq. in Pennsylvania). Accordingly, the District Attorney of Montgomery County filed a petition under Section 5963 of that Act naming as respondents Mary Patterson McPherson, President of Bryn Mawr College, Julie Painter, records custodian and Katherine Boudin.

Boudin, by counsel, filed a petition to discharge the motion and the matter came for hearing before the writer on April 8, 1983. Ms. Painter appeared on behalf of the college, and testified that the envelope containing the file had been in her possession, unopened, since its receipt from the Supreme Court of Rockland County, in November, 1982. On motion of the Commonwealth, the envelope was admitted in evidence and is now in the custody of this court.

Bryn Mawr College did not resist the efforts of the Rockland County authorities to obtain the record, however, Boudin urges us to dismiss the petition and return the records to the college claiming that: (1) the requirements of the Act to Secure Attend-

ance of Witnesses have not been met; (2) the documents contained in the file have no materiality or probative value; and (3) the papers contain her constitutionally protected private and political thoughts and feelings.

Section 5963 states:

If a judge of a court of record . . . certifies under the seal of such court that there is a criminal prosecution pending in such court, . . . that a person being within this Commonwealth is a material witness in such prosecution, . . . and his presence will be required for a specified number of days, upon presentation of such a certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for hearing and shall make an order directing the witness to appear at a time and place certain for the hearing.

The "certificate" issued by the Rockland County Court was not under seal. There is not a criminal prosecution pending in Rockland County (venue having been transferred to Orange County, New York) and there was no testimony concerning the identity of a witness whose presence is required, much less when and for what number of days it would be required. In short, the Act is simply inappropriate in this setting.

However, a section of the Uniform Interstate and International Procedure Act, 42 Pa.C.S.A. §5326 is appropriate and the procedure employed meets its requirements.

§5326. Assistance to tribunals and litigants outside this Commonwealth with respect to depositions

(a) General rule.—A court of record of this Commonwealth may order a person who is domiciled or is found within this Commonwealth to give his testimony or statement or to produce documents or other things for use in a matter pending in a tribunal

outside this Commonwealth. The order may be made upon the application of any interested person or in response to a letter rogatory and may prescribe the practice and procedure, which may be wholly or in part the practice and procedure of the tribunal outside this Commonwealth, for taking the testimony or statement or producing the documents or other things. To the extent that the order does not prescribe otherwise, the practice and procedure shall be in accordance with that of the court of this Commonwealth issuing the order. The order may direct that the testimony or statement be given, or document or other thing produced, before a person appointed by the court. The person appointed shall have power to administer any necessary oath.

(b) Voluntary compliance.—A person within this Commonwealth may voluntarily give his testimony or statement or produce documents or other things for use in a matter before a tribunal outside this Commonwealth. 1976, July 9, P.L. 586, No. 142, §2, effective June 27, 1978.

As stated earlier, Ms. Painter, records custodian of Bryn Mawr College, appeared before this court on April 8, authenticated the documents and surrendered them on request. The district attorney appeared as an "interested person" acting on behalf and at the behest of the District Attorney of Rockland County. The terms of the Act have been met, all that is required is the formulation of an order of transmittal.

Boudin also claims the documents are not material or of probative value. We do not see that as our concern; it is not for this court to question the materiality or probative value of the materials sought. It would be presumptuous of us to consider the evidentiary issue under any circumstance and most certainly after the Supreme Court of Rockland

County has implicitly ruled that the documents are material and probative by its order of July 29, 1982.

Lastly, Boudin claims a privacy interest in the documents sufficient to preclude their use by the New York prosecution. Initially it should be noted that the Fifth Amendment privilege against self-incrimination is not relevant. The privilege against self-incrimination is not violated when a third party turns over papers which relate to a defendant, but are not in his possession. Fisher v. United States, 425 U.S. 391 (1976). Also, a defendant's Fifth Amendment rights are not compromised by requiring him to provide a handwriting exemplar. United States v. Dionisio, 410 U.S. 1 (1973).

Boudin's claim must be based on the general right to privacy found to emanate "from the totality of the constitutional scheme under which we live." Griswold v. Connecticut, 381 U.S. 479 (1965); Roe v. Wade, 410 U.S. 113 (1973); In Re B 482 Pa. 471 (1978). The zones of privacy created by the courts apply only in certain areas; as In Re B states:

[8] The right of privacy derived from these constitutional underpinnings protects the privacy of intimate relationships like those existing in the family, marriage, motherhood, procreation, and child rearing. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). As such, the protection extends not only to the home, Stanley v. Georgia, supra, but also to the doctor's office, the hospital, the hotel room, or as is otherwise required to safeguard the right to privacy involved in such intimate relationships. Paris Adult Theatre I v. Slaton, supra.

Pennsylvania cases recognizing a right of privacy have done so only as to medical records. Com. Ex Rel. Gorto v. Gorto, 298 Pa. Super 509, 444 A.2d 1299 (1982); In Re B, supra (mother's right of pri-

vacy precluded use of her medical records in custody hearing even in absence of doctor-patient privilege).

With respect to medical records, the right to privacy is qualified, and must be balanced against the public's interest in obtaining the material. McKay v. Commonwealth, 52 Pa. Commw. 24, 415 A.2d 910 (1980) found no violation of privacy in a hospital's disclosure of a psychiatric report to PennDOT, holding the patient's privacy right was outweighed by the public's interest in having incompetent drivers removed from highways. See also Platt v. Platt, 266 Pa. Super 277, 404 A.2d 410 (1979). Generally, courts will allow disclosure of private information when there are safeguards to prevent its misuse, or disclosure to the general public. Whalen v. Roe, 429 U.S. 589 (1977) (state statute which required disclosure of all patients receiving "schedule II drugs" not violative of privacy because jury is sworn to secrecy).

Counsel for Boudin requests argument on the privacy question. We see it as unnecessary, for an examination of the file discloses nothing of a private nature as that term is discussed in the cases. It does, however, contain examples of what appear to be her signature. Otherwise it is mostly a collection of typewritten letters. There is a transcript of her grades, both high school and college, and some other papers innocuous by any measure. The only political expressions are those attributed to her in articles drawn from the New York Times and the Main Line Times, a suburban Philadelphia weekly. That they are not private hardly bears mention.

Moreover, if the claim has any merit, the privacy interest is one which the New York Court is fully capable of protecting and given the balancing test of McKay v. Commonwealth, supra, it is more fitting

that the claim be addressed there than here. That court has a broader view of the facts and a more comprehensive responsibility; ours is only collateral.

Indeed, we suspect raising the issue here is a ploy to frustrate the New York prosecution. This proceeding, as well as previous litigation in Pennsylvania, would be unnecessary but for Boudin's contemptuous refusal to obey the exemplar order of last July. If she is serious, compliance with that order readily preserves her privacy.

That suspicion is enhanced by counsel's after-hearing request by letter that a stay be granted should our ruling be adverse to her. We are urged to retain custody of the file while the propriety of sending the record to New York is tested on appeal in the Superior Court of Pennsylvania. Even if we were to assume (naively, of course) that such an appeal would be taken in good faith and not to gain the delay which would inevitably result, the effect would be the same; to frustrate the New York prosecution. If by this mistrust we do the defendant a disservice, the remedy lies in the courts of the Empire State.

## ORDER

And now, this May 3, 1983, the motion of the District Attorney of Montgomery County for production of the Bryn Mawr College record of Katherine Boudin is granted. In accordance with Section 5326 of Title 42 of Pennsylvania Consoldiated Statutes, Annotated, Assistant District Attorney Joseph J. Hylan, Esq., is appointed to receive the documents which are delivered to him in a sealed envelope; he is to transmit them forthwith to Kenneth Gribetz, Esq., District Attorney of Rockland County, New York, who is directed to retain such envelope in its sealed condition until further order of the Supreme

Court of Rockland County. Assistant District Attorney Hylan is directed to telephone District Attorney Gribetz, advise him of this order and send a copy of it under separate cover to Mr. Gribetz.